No. 17,354.

COLORADO FUEL AND IRON CORPORATION *v.* INDUSTRIAL
COMMISSION ET AL.
(269 P. [2d] 1070)

Decided April 26, 1954.

Mr. CHARLES H. GROVES, Messrs. TIPPIT, HASKELL & WELBORN, Mr. ELMER P. COGBURN, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK A. WACHOB, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission.

Messrs. GRAHAM & SCHEUNEMANN, for defendant in error Reynolds.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

THIS is a workmen's compensation case. Claimant, on February 26, 1952, was an employee of the Colorado Fuel and Iron Corporation at its steel mill in the City of Pueblo, Colorado. On that date, in the course of his employment, he was struck on the head by a heavy object and knocked down backwards. He sustained a severe cut on his forehead and was taken to the company emergency hospital where the laceration in his head was sutured. He returned to the hospital February 27th and 28th, and March 1st and 5th, for further treatment. He testified that shortly after the accident he began to notice a soreness in his back which extended down his right leg; that he was "bent over" once in a while, and that within two weeks after the accident, "I grew steadily worse and shortly after that I had to rest two or three times between the main gate and my job, sometimes it was very intense, sometimes it wasn't quite so severe"; that on April 22nd he went to the company dispensary and asked for an X-ray and told the company physician that he had pain in his back and hip and that he knew there was "something awfully wrong." The

company doctor X-rayed the hip but did not X-ray the spine.

Claimant further testified that at that time he was given "penicillin and something in the hip and also a handful of pills to take"; that on May 16th the pain became so severe he was completely disabled and thereupon consulted his own physician, Dr. Norman, who X-rayed the spine and determined that claimant had sustained a ruptured disc. Dr. Norman operated with satisfactory results. Claimant did not return to the company doctors after his visit of April 22nd until after the operation was performed, and no notice was given to the employer that a ruptured disc had been discovered or that surgery had been contemplated.

Dr. Barwick, one of the employer's physicians, who took the X-ray of claimant on April 22nd, testified in part as follows: "I think that Mr. Reynolds has had a progressive degeneration of an intervertebral disk for a period of years." He further stated that he "could not state positively" whether the injury caused an aggravation of this condition. In this connection he said, "In my opinion it certainly isn't the general rule, but it is possible that his pain in the right hip going down, his sciatic rheumatism, as he calls it, could have been exaggerated by his injury."

Dr. Norman testified in substance that in his opinion the rupture of the intervertebral disc was caused by the accident of February 26, 1952. A company physician testified that he had no opinion as to whether claimant's herniated disc was caused by trauma. He stated, "* * * approximately 60 per cent of such hernias are considered to be caused by trauma and approximately 40 per cent of them are considered not to be caused by trauma. I don't know that this man's was due to trauma or not, but it is my opinion that it was not due to trauma on February 26th." There is no evidence in the record of traumatic injury at any other time, nor is there any evidence of any event or condition which could have

caused the back injury of which claimant complained, other than the accident of February 26, 1952.

The findings and award of the commission contained the following:

"The Referee finds from the medical evidence that prior to the incident of February 26, 1952 claimant had been afflicted with a progressive degeneration of the disc at the right fifth interspace which condition was aggravated thereby; that the resulting surgery was made necessary by this injury.

"It is, therefore, ordered: That respondent pay compensation to claimant at the rate of $28.00 per week from May 17, 1952 to July 28, 1952 inclusive, for and on account of temporary total disability; thereafter at that same rate until the further sum of $2533.44 has been paid, for and on account of permanent partial disability.

"Further ordered: That the respondent employer, a self-insurer, pay for the medical, surgical and hospital expense incurred as a result of said accident as required by the employers medical plan heretofore approved by this Commission, including the services of the operating surgeon and ensuing hospitalization."

The district court entered judgment sustaining this award, and the employer, seeking reversal of the judgment, brings the case to our Court for review by writ of error. As grounds for reversal, counsel for the employer present arguments which raise the questions hereinafter considered.

Questions to be Determined.

First: *Where an employee, who is subject to the provisions of the Workmen's Compensation Act, suffers an injury, and the employer supplies the services of physicians for the treatment of such injury; may the employee engage a doctor of his own selection and compel the employer to pay for the services rendered by such physician without first obtaining permission of the Industrial Commission, after notice to the employer, authorizing the change of doctors?*

This question is answered in the negative. Section 360, chapter 97, '35 C.S.A., provides in part: "In all cases of injury, the employer or insurer, as the case may be, shall have the right in the first instance to select the physician who shall attend said injured employee; provided, however, that if the services of a physician are not tendered at the time of injury, the employee shall have the right to select his own physician *and may upon the proper showing to the commission procure its permission at any time to have a physician of his own selection attend him,* * * *." (Emphasis supplied)

It is clear from the foregoing provision of the statute that if a claimant in a workmen's compensation case desires to avail himself of the services of a physician other than the one furnished by his employer, the consent of the Industrial Commission is necessary before the employer can be held liable for the expense of such services. Any other interpretation of the language employed would render the above italicized portion of the statute nugatory.

 Counsel for the employer rely on *Baeza v. Remington Arms Co.,* 122 Colo. 510, 224 P. (2d) 223, from which we quote the following: "By not giving advance notice to the employer and the Industrial Commission of his intention to have the disabling operation performed and of his intention to hold his former employer for the resulting disability, claimant has in effect rendered the foregoing provisions nugatory and of no avail. Both employer and Industrial Commission have been barred from the right to have their respective physicians examine claimant and prescribe treatment." In that case it was said that section 464, chapter 97, 1947 Cum. Supp. '35 C.S.A. (S.L. '45, p. 441, §22) was the applicable statutory provision. This statement is incorrect, since the facts involved in that case had to do with an industrial accident and not with an occupational disease. The statute to which reference is therein made is limited in its application to cases involving occupational diseases. The

section of the statute applicable to the case at bar (as well as to the Baeza case) is section 360, chapter 97, '35 C.S.A., supra. While the language of the two sections is not the same, we are convinced that the objective sought is the same in each instance, and while we erroneously applied the occupational disease statute in the Baeza case the language used in that opinion is equally applicable to the portion of the statute which governs injury cases.

Since it is admitted that claimant in the instant case gave no notice to his employer that he intended to change physicians and employ his own doctor, and underwent surgery without first obtaining the consent of the commission, the employer cannot be held liable for the bills incurred for such professional services or for the hospitalization connected therewith. In this particular the commission and the trial court erred.

Second: *Where an employee suffers an injury in an industrial accident and the employer offers the services of physicians and hospitalization necessary to provide relief from the injury sustained; and where the employee secures his own physician and contracts surgical and hospital expense without notice to his employer, and without the approval of the Industrial Commission; will such conduct on the part of the employee necessarily result in a forfeiture by him of all rights to compensation for temporary and permanent disability resulting from said accident?*

This question is answered in the negative. In this case it is clear that the operation performed by Dr. Norman was necessary to correct the condition of which claimant complained. It is equally clear that the work of the surgeon was expertly done, and that the results were satisfactory. No contention is made that the permanent disability of ten per cent, which was adjudged by the commission, could have been lessened by surgery performed by any other doctor or by treatment of any other kind; thus the company cannot complain of the fact that an-

other physician successfully performed an operation, without cost to it, which claimant might have been entitled to receive at the expense of the employer.

It does not follow that the act of the employee, in engaging his own surgeon, relieves the employer from all responsibility for the payment of benefits provided by law for disability incurred by the employee in an industrial accident. The trial court did not err in affirming this portion of the award of the Industrial Commission.

■ Third: *Was there sufficient competent evidence in support of the commission's findings that the accident aggravated an existing condition of "Progressive Degeneration of the Disc at the Right Fifth Interspace," and that the "resulting surgery was made necessary by the injury"?*

This question is answered in the affirmative. All that is necessary to warrant the finding of casual connection between the accident and the disability, is proof of facts and circumstances which would indicate with reasonable probability that the herniated disc resulted from, or was aggravated by, the accident. Our Court, *in Industrial Commission v. Royal Indemnity Co.,* 124 Colo. 210, 236 P. (2d) 293, said, inter alia: "There is no dispute concerning the principles of law which are involved. If the evidence, and the logical inferences therefrom, can be said to warrant a conclusion that the accident, within a reasonable probability, resulted in the disability, the claimant is entitled to compensation, since he was successful before the commission. If, however, the evidence, as a matter of law is insufficient to remove the question of causation from the realm of conjecture and mere possibilities, the award of the commission cannot be upheld."

We cannot say, as a matter of law, that the evidence in the instant case is insufficient to sustain the award of compensation.

The judgment is affirmed in part and reversed in part, and the cause remanded with instructions to enter judgment consistent with the views herein expressed.