# No. 18,092.

VANADIUM CORPORATION OF AMERICA AND STATE
COMPENSATION INSURANCE FUND v. DUDLEY J. SARGENT
AND INDUSTRIAL COMMISSION OF COLORADO.

(307 P. [2d] 454)

Decided February 18, 1957.

Mr. HAROLD CLARK THOMPSON, Mr. LOUIS SCHIFF, Mr. ALIOUS ROCKETT, for plaintiffs in error.

Messrs. EAKES & HAMILTON, for defendant in error Dudley J. Sargent.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

*En Banc.*

Mr. JUSTICE SUTTON delivered the opinion of the Court.

THIS is a workmen's compensation case primarily relating to whether the evidence properly showed that a congenital back defect was permanently aggravated or increased due to an accident admittedly arising out of and in the course of claimant's employment.

We refer to the parties as they appeared below where plaintiffs in error were plaintiffs and defendants in error were defendants, or, where necessary, to plaintiff in error Vanadium Corporation of America as the employer; plaintiff in error the State Compensation Insurance Fund as the Fund; defendant in error Dudley J. Sargent

as claimant; and defendant in error Industrial Commission of Colorado as the Commission.

Employer is a corporation authorized to do business in Colorado and operates a mill or plant at Durango, Colorado; Fund is the insurance carrier of the employer insuring its liability under the Colorado Workmen's Compensation Act.

On November 7, 1954, claimant injured his back while shoveling gravel into a cement mixer at his employer's plant. On November 15, 1954, the Fund received the employer's written first report of accident dated November 10, 1954, signed by John W. Blackburn, Mines Auditor. This report showed "injured back." On December 13, 1954, the Fund in writing stated: "We admit that the person named above sustained an accidental injury which arose out of and in the course of employment on the date given." On January 27, 1955, claimant filed his Notice and Claim for Compensation. Two hearings were held and at various times claimant was examined by several doctors for the Fund and was treated by other doctors as more fully hereafter appears. He was awarded temporary total disability at the first hearing. At the request of plaintiffs in error suspension of payments to claimant was granted on September 1, 1955.

The final action of the Commission entitled "Supplemental Award" was entered February 27, 1956. It had followed an Application for Review filed by the Fund on February 3, 1956. Prior thereto the Commission had entered its Findings of Fact and Award on January 25, 1956, correcting one finding of the Referee and otherwise approving and adopting the Referee's Order of October 26, 1955, as the order of the Commission. The order of the Referee on October 26, 1955, was entitled a "Supplemental Order" and recited that:

"Claimant suffered a ruptured intervertebral disc in an accident arising out of and within the course of his employment on November 7, 1954. Claimant's back complaints began while he was in the army in World War

II. A spondylolisthesis had been diagnosed and a laminectomy and fusion had been performed prior to the injury of November 7, 1954. Thereafter conservative therapy proved futile and claimant was again operated upon, at which time a ruptured disc was disclosed, removed, and the spine fused. His condition is still unsatisfactory and further fusion indicated.

"The Referee finds from the medical evidence that claimant is still temporarily and totally disabled as a result of the aggravation of his pre-existing condition by the injury of November 7, 1954.

"IT IS, THEREFORE, ORDERED: That respondents continue the payment of compensation as per the Referee's Order of May 13, 1955."

The wording stricken by the Commission from the order of October 26, 1955, was: " * * * and a laminectomy and fusion had been performed prior to the injury of November 7, 1954." Apparently the stricken wording arose because of errors in the Fund's doctors' report of July 8, 1955, by Dr. I. E. Hendryson.

Plaintiffs in error were dissatisfied with the Commission's final action, secured proper consent and filed suit in the Denver District Court seeking a reversal of the order. After a trial to the court a finding of fact affirming the Commission was filed by the trial court entitled "Memorandum Opinion." Judgment was entered thereon and motion for new trial dispensed with. Plaintiffs in error are here seeking a reversal by writ of error.

Plaintiffs in error urge five grounds for reversal as follows:

1. The evidence does not support the finding that claimant was more than temporarily disabled as a result of his accident of November 7, 1954, and such disability ceased long prior to September 1, 1955, the date to which he was paid compensation.

2. The evidence does not support the contention that the surgery performed by Dr. Wenz was to relieve a

condition proximately caused by the accident of November 7, 1954.

3. The evidence amply proves that claimant changed doctors without conforming to the law.

4. The evidence does not prove that any herniated disc resulted from the accident of November 7, 1954.

5. The Referee erred in failing to afford plaintiffs in error an opportunity to cross-examine Dr. Wenz.

Claimant on his part contends that the original order of the Industrial Commission determined all the facts except whether there was permanent disability and that since no appeal was taken therefrom in due time that it is res judicata.

The evidence in the record shows that claimant, then of the age of thirty-nine years, was a laborer at employer's mill and had been employed *doing day labor* from May 1954 until the injury arose on November 7, 1954. On the day of the injury he was shoveling gravel into a cement mixer when he jumped up from a bending position to use his shovel to push some gravel down. At that moment, according to his testimony, he had "a severe hurting, cramps or pain in the back of my neck, and then one hit me a little bit below my shoulders and I also had a drawing sensation in the head, of being intensely drawed backwards; and then one hit me in the middle of my back, approximately at that time, and when this hit me in the middle of my back it seemed like something just let go in my head and I blacked out."

"Q. You fell unconscious? A. Yes sir. * * * Q. Was this pain acute, sharp? A. When it let go it was very severe. Of course it was a drawing and pulling. Q. It came very suddenly? A. Yes, a hurting."

Claimant had an admitted congenital defect at his fourth and fifth lumbar vertebrae and at the sacrum. The defect is termed a *spondylolisthesis*. This defect, however, was not serious enough to keep him from military service during World War II though later he was medically discharged with a rating of 10% disability on

his back and 10% for a nervous condition. His back bothered him in September 1953 so he consulted Dr. Charles L. Mason at Durango, Colorado, and Dr. Mason called in Dr. Erwin P. Wenz as a consultant. The doctors, after x-ray examination, recommended a spinal fusion. Claimant went to a Veteran's Hospital *where the fusion was not deemed necessary* but where a *neural arch* operation was performed during March 1954. It was in May 1954, following that operation that claimant was hired by this employer and did day laborer work at employer's mill. Claimant admittedly did this hard labor for over five months, and until the occurrence on November 7, 1954, without other than occasional pain in his back.

Following the injury on November 7, 1954, claimant was hospitalized a short while, then rested at home, then attempted to work for the employer again on November 20 and 21, 1954. He could not stand the pain however and has not worked since. He has been to the Veteran's Hospital, to Dr. Mason, to whom the employer first referred him, then to Dr. Wenz. He knew his injury might not be compensable because of his congenital defect. He testified, without contradiction, that he went to Dr. Wenz (which visit resulted in the operation described in Dr. Wenz's letter on October 18, 1955) because he went to his employer's mill at Durango and Mr. Vesper, the employer's assistant mill superintendent, "suggested that I change doctors."

Dr. Wenz's letter of December 27, 1954, to Fund supports other parts of the record and shows that on September 29, 1953, x-rays and physical examination of claimant's back " * * * revealed spondylolisthesis second degree, with 16 mm of a 40 mm body anteriorly dislocated. At that time, patient was advised to have neural arch removed and spinal fusion performed. The patient promptly left my care; went to the Veteran's Hospital in Grand Junction, where the neural arch was removed, but the fusion was not done." Following the accident of

November 7, 1954, Dr. Wenz next saw claimant on November 22, 1954. At that time he reported "X-ray examination * * * revealed 26 mm slipping * * *." * * * "These x-rays also revealed neural arch defect as a result of surgery and the patient was hospitalized for traction, local heat and subsequent surgery, with an anterior spinal fusion the contemplated procedure. While in traction the patient's spondylolisthesis reduced 2 mm."

No doctor seemed to be able to say when the "slippage" occurred but there is evidence that claimant could not physically work *after* it did occur. Dr. Wenz, under cross-examination by the Referee, after testifying as to the claimant's congenital back for which prior surgery had been recommended, stated in regard to the November 7, 1954, accident:

"Q. How much of a factor is that (accident) in this picture? A. Well, as I attempted to say, I don't know how much of this additional fourteen millimeters of slippage occurred on November 7, 1954. Q. Do you think that the condition is probably or just possibly aggravated by this November 7th incident? A. It was probably aggravated. To what degree I don't know. Q. Then the surgery that you performed would probably not have been necessary if he hadn't had this injury of November 7, 1954? A. I don't know. If he had — Q. I know you don't know. I'm just asking for probabilities or possibilities. A. Well, it possibly would not have been necessary. Q. It possibly wouldn't have been necessary, but it probably would have been? A. I did not say that, sir. Q. Well do you agree? Is that what you mean? A. I don't know what the man's back was like prior to the time he injured himself. There is no x-ray record between the date that he was operated on in Grand Junction (neural arch removal) and when I saw him again." * * *

Then on re-examination by claimant's attorney Dr. Wenz said in part:

"Q. Doctor, when you saw him the first time after

this accident of November 7, 1954 was he then able to work? A. I did not feel he should have been working at that time. * * * Q. * * * he told you that he had been working on November 7th, 1954 and on the days prior to that? A. To the best of my knowledge, yes. Q. But when you examined him he was then unable to work? A. That's right. * * * Q. Would he have been able to have performed heavy work in a mill and refinery with the condition that you observed in his back after this supposed accident of November 7, 1954 in the condition that his back was in as you observed it at that time? A. No, and I'm surprised that he could perform it with the slippage he had in 1953. He had marked spondylolisthesis a year earlier, and this was twice as bad. I don't feel that he would have been able to return to work, at heavy labor, when I saw him in November."

Following Dr. Wenz's examination on November 22, 1954, claimant left him, went to a Dr. Lloyd, then to a Veteran's Hospital, then returned to Dr. Wenz who operated on him on February 4, 1955, for a spinal fusion, which evidently did not prove successful. The record shows claimant is still incapacitated and needs further surgery to correct his present condition. We note that claimant intended to call Dr. Wenz as a witness at the supplemental hearing held October 13, 1955, but the witness did not appear and no reason is given for his absence.

After the above review of the record we will now consider the grounds alleged for reversal.

FIRST QUESTION TO BE DETERMINED:

*Does the evidence properly before the Commission support a finding that claimant was more than temporarily disabled as a result of his accident of November 7, 1954?*

This question is answered in the affirmative. The purpose of Workmen's Compensation Statutes is to afford protection to employees injured from causes arising out of and during the course of their employment. '53

C.R.S., 81-13-2. If the injury results in the aggravation of a pre-existing injury or condition there is a direct causal connection which brings the employee, in proper cases, under the benevolent protection of the statute.

Here the facts disclose that the pre-existing congenital back condition *did not* prevent claimant from performing hard physical labor for this employer for over five months immediately preceding November 7, 1954. It is undisputed that the accident occurred and that it arose out of and during the course of the employment. From the record it is clear that claimant could not work after the accident. He has shown the causal connection and the proximate result.

The various adverse opinions of some of the doctors as to claimant's condition *after* the accident cannot be the sole determinative factor here. Opinion must fall before the actual fact that claimant was able to work *before* the accident. There is clearly some evidence to support the finding of the Referee and the Commission. We have often held that findings of fact of the Industrial Commission based upon conflicting testimony or evidence are conclusive on review. *Vaugh v. Ind. Com., et al.,* 79 Colo. 257, 245 Pac. 712; *Wood, et al. v. Ind. Com., et al.,* 100 Colo. 209, 66 P. (2d) 806. *State Comp. Ins. Fund, et al. v. Batis, et al.,* 117 Colo. 1, 183 P. (2d) 891. This is in accord with the statute governing review by writ of error in workmen's compensation cases. '53 C.R.S., 81-14-17. In *Olson-Hall v. Commission,* 71 Colo. 228, 205 Pac. 527, at page 230, we said quoting from *Passini v. Industrial Commission,* 64 Colo. 349, 171 Pac. 369:

"This Court may consider only the legal question of whether there is evidence to support the findings, and not whether the Commission has misconstrued its probative effect. The award is conclusive upon all matters of fact properly in dispute before the Commission, where supported by evidence, a reasonable inference to be drawn therefrom."

In the *Olson-Hall* case there was no direct proof of

the accident where an employee had allegedly fallen from a ladder and no competent proof of any fall causing his death. On the other hand it was clearly shown that the death was due to natural causes.

In *Colo. F. & I. Co. v. Industrial Com.*, 129 Colo. 353, at 359, 269 P. (2d) 1070, we said in a case involving a herniated disc injury where the accident was alleged to have aggravated an existing condition and that the resulting surgery was made necessary by the injury:

"All that is necessary to warrant the finding of causal connection between the accident and the disability, is proof of facts and circumstances which would indicate with reasonable probability that the herniated disc resulted from, or was aggravated by, the accident. Our Court in *Industrial Commission v. Royal Indemnity Co.*, 124 Colo. 210, 236 P. (2d) 293, said, inter alia: 'There is no dispute concerning the principles of law which are involved. If the evidence, and the logical inferences therefrom, can be said to warrant a conclusion that the accident, within a reasonable probability, resulted in the disability, the claimant is entitled to compensation, since he was successful before the commission. If, however, the evidence, as a matter of law is insufficient to remove the question of causation from the realm of conjecture and mere possibilities, the award of the commission cannot be upheld.'

"We cannot say, as a matter of law, that the evidence in the instant case is insufficient to sustain the award of compensation."

And in *Industrial Com. v. Royal Co.*, 124 Colo. 210, at p. 213, 236 P. (2d) 293, we said:

"All that is necessary, to warrant the finding of causal connection between the accident and the disability, is to show facts and circumstances which would indicate with reasonable probability that the detached retina resulted from, or was precipitated by, the accident."

In the *Royal Co.* case supra this court quotes from *Royal Indemnity Co. v. Ind. Com.*, 88 Colo. 113, 293 Pac.

342, a doctor's testimony very similar to that of Dr. Wenz in the instant case. There was an alleged eye injury from a piece of flying rock. We quote, page 214:

"Eye specialists were called as witnesses. None testified that the accident 'probably' caused the injury to the eye. One doctor said, in answering a question as to whether the accident 'could have caused' the injury, or 'would cause it,' that he 'wouldn't say for sure whether it did, one way or the other.' Several doctors testified that in their opinion there was no causal connection. The opinion in that case contains the following statement concerning the evidence there under consideration: 'But all except one testified long after the accident. One doctor, who made his examination in June, 1929, testified that he did not assume any conclusion as to the actual cause of the condition for the reason that after two years it would be impossible to state whether the condition was caused by the injury or existed previous to the injury; that it was possible that the claimant could have had this condition of the left eye previous to the injury. He was asked: 'Is the condition you find this man's eye in such as to have been caused by accident?' He answered: 'Yes, it could have been. I can only answer that by saying the slight place on the eye could have caused a condition on the back of the eye, not to have done it. I cannot give you a definite opinion on that.' Another doctor said, in a report to the commission: 'At my examination of claimant on May 28, 1928, I could not determine the cause of his blindness. While in my opinion the accident had to do with his visual loss, I cannot prove this statement.' "

"In that case we said further: 'Such evidence amply sustains the finding of the commission relative to the cause of the loss of vision of the left eye.' "

Plaintiffs in error have cited *Deines Brothers, Inc., et al., v. Ind. Com.,* 125 Colo. 258, 242 P. (2d) 600, as authority that "mere inferences will not suffice" to uphold an award of the Commission and that where there

is no conflict in the testimony in a Workmen's Compensation case the Supreme Court on review may properly draw its own conclusions therefrom. That case is so different on its facts that it is not applicable. The cited case of *Ind. Com., et al. v. Diveley,* 88 Colo. 190, 294 Pac. 532, is in point only as authority to show that a claimant must prove not only the accident and the injury, but also the causal connection between the two; and, that this court will not on review disturb Commission findings based upon conflicting evidence.

SECOND QUESTION TO BE DETERMINED:

*Has the disability terminated to the final date in the record?*

This question is answered in the negative. The final finding of the Commission on January 25, 1956, affirmed the Referee's finding of October 26, 1955, " * * * from the medical evidence that claimant is still temporarily and totally disabled as a result of the aggravation of his pre-existing condition by the injury of November 7, 1954." Payments were ordered continued per the Referee's order of May 13, 1955.

■ Once the injury is determined to have arisen out of and during the course of claimant's employment obviously the results flowing proximately and naturally therefrom come under the aegis of the statute. Here payments properly must continue for total disability until the claimant has recovered or until the full statutory benefits have been paid.

THIRD QUESTION TO BE DETERMINED:

*Does the evidence support the contention that the surgery performed by Dr. Wenz was to relieve a condition proximately caused by the accident of November 7, 1954?*

This question is answered in the affirmative. Claimant was in need of a spinal fusion prior to the accident of November 7, 1954, but the record shows he was not incapacitated and in fact had been performing hard

physical labor for his employer for over five months. The accident of November 7 was the precipitating cause of his difficulty.

In the *Colo. F. & I. Co.* case supra this court held that because the claimant had used his own surgeon without following the statutory requirement he was·not barred from his compensation benefits other than the payment of his private medical and surgical expenses because there was agreement that·he needed the operation and it was successful.

The record here shows that the weight of opinion is that claimant here needed a spinal fusion operation. He had it performed by his private doctor without following the statutory method of procuring his own surgeon. The fact that the operation was unsuccessful does not bar him from his just compensation benefits as to other than his privately incurred and unapproved bills.

### FOURTH QUESTION TO BE DETERMINED:

*Does the evidence disclose that claimant changed doctors without conforming to the statute?*

This question is answered in the affirmative. The pertinent statutory wording is:

"In all cases of injury, the employer or insurer, shall have the right in the first instance to select the physician who shall attend said injured employee. If the services of a physician are not tendered at the time of injury, the employee shall have the right to select his own physician *and upon the proper showing to the Commission* may procure its permission at any time to have a physician of his own selection attend him, and in any nonsurgical case the employee with such permission in lieu·of medical aid, may procure any nonmedical treatment recognized by the laws of this state as·legal, the practitioner administering such treatment to receive such fees therefor under the medical provisions of this chapter as may be fixed by the commission." (Emphasis added.) '53 C.R.S., 81-12-12.

Here the record discloses that claimant first went to Dr. Mason as directed by the employer. Being dissatisfied he then went again to his employer who authorized him to change doctors. Claimant then went to Dr. Wenz, later to another doctor and to the Veteran's Hospital, then back to Dr. Wenz who operated on him.

This type of situation is not expressly covered by our statute so we must determine the statute's intent. The employer did tender the services of Dr. Mason "in the first instance" and "at the time of injury" so the employee's secondary right of selection was forever lost. Can we say that in the second instance the employer can give an employee carte blanche to select a different doctor, especially when the employee's selection has resulted in *surgical* expense to not only the employer but also the Fund? We think not. True it is that Mr. Vesper telling claimant to change doctors resulted in a waiver of the employer's rights in this regard, but the employer was not the agent for the Commission after it had acted "in the first instance" nor could it waive the Fund's rights nor waive the express statutory requirement that " * * * upon the proper showing *to the Commission* (the employee) may procure *its* (the Commission's) *permission* at any time to have a physician of *his own selection* attend him * * *." Any other holding would render the statute nugatory and would deny to those who pay the bills their legal right to know what is being done. The legislative intent of this interpretation is confirmed because of the express grant to the employee who has secured commission permission to procure legal nonmedical treatment *"in any nonsurgical case."* In *Baeza v. Remington Arms Co.* (1950), 122 Colo. 510, 224 P. (2d) 223, this court dealt with a rather similar situation. There claimant, a World War II veteran, discharged for medical reasons, injured a toe while at work. Later he had trouble with his ankle swelling and was operated on for a fusion of the ankle at a Veteran's Hospital leaving him with a permanent disability of the ankle. In the

Baeza case there was no causal connection shown between the toe injury and the ankylosis and there, the referee, commission, trial court and this court all denied both temporary and permanent disability benefits to claimant. Baeza failed to give any notice to his former employer or the insurance carrier *before* the disabling operation was performed and could not recover any expenses he incurred thereby for two reasons: because there was no causal connection between that injury and the accident, and, because he failed to get statutory consent for the operation. To the same effect is *Colo. F. & I. Co. v. Industrial Com., supra.*

██ Here the award of the referee, the commission and the judgment of the district court are in error in continuing that part of the Referee's Order of May 13, 1955, which "Ordered, that the respondents pay for the necessary medical, surgical and hospital expense incurred as a result of this accident within six months from the date of the accident and not to exceed $1,000.00, and in no event to exceed the actual expense incurred." That part of the Order should be amended to provide only for such expenses *when incurred in accordance with statutory authority,* and of course in accordance with the views expressed herein.

FIFTH QUESTION TO BE DETERMINED:

*Did the Referee err in failing to afford plaintiffs in error an opportunity to cross-examine Dr. Wenz as to his letter of October 18, 1955?*

This question is answered in the negative.

The pertinent part of the statutory provision involved reads:

" * * * All ex parte evidence received by the Commission shall be reduced to writing and any party in interest shall have the opportunity to examine and rebut the same by cross-examination or by further evidence." '53 C.R.S., 81-14-3.

We note that Dr. Wenz was first introduced into this

case when he was called as a witness at the first hearing by the plaintiffs in error. Later the claimant engaged him for his private surgery, giving the doctor a dual capacity that is immaterial here. The letter was addressed to claimant's attorney and is marked as being received by the Industrial Commission on October 21, 1955. This was after the second and final hearing held October 13, 1955. The operation written about was performed on the claimant, but the obvious purpose of the report was so that the Commission and the Fund would have a written record from Dr. Wenz to supplement reports disclosing what the Commission, the Fund and the Fund's other doctors already knew, i.e., that claimant had the operation after the accident. We note that among the Fund's reports appearing in evidence, the written medical report of Dr. Bernard C. Sherbok dated January 13, 1955, stated in part " * * * Following the low back operation * * *." The written report of Dr. Charles A. Freed dated September 1, 1955, comments on the back operation in part as " * * * On February 4, 1955, Dr. Wenz performed surgery on his back." * * * "Since the accident and subsequent surgery * * *." "I am not at all convinced that, through the anterior approach such as was done on this claimant, a posterior ruptured disc can be diagnosed." * * * Even Dr. I. E. Hendryson's report dated July 8, 1955, commented on the herniated disc. The Fund's witness Dr. Wenz on direct examination at the first hearing testified: "Q. What was the operation? A. We removed the disc at L-4, L-5 and fused L-4 and L-5 with autogenous bone graft and staples." The only important word used by Dr. Wenz in the letter that did not appear in his original testimony is "herniated," and it does appear elsewhere in the evidence.

We will not assume that the Commission did admit or consider such evidence as the letter in question in the absence of a statement to that effect in the record. Here the record does not disclose such admission in evidence or that the Commission considered it. Clearly it was not

necessary to admit or consider the letter for there is ample other evidence relating to the ruptured disc's removal to sustain the findings relating thereto.

It is not necessary for us to determine whether the Fund made application in due time to examine and attempt to rebut this letter — assuming without deciding that they could cross-examine this witness.

### SIXTH QUESTION TO BE DETERMINED:

*Does the evidence prove that a herniated disc resulted from the accident of November 7, 1954?*

This question is answered in the affirmative.

From the earlier quotations from the Fund's own doctors we can see that they knew that Dr. Wenz had found and removed a herniated disc. There being some evidence before the Commission to sustain its findings as to the removal of a herniated disc we will not disturb its decision on review.

### SEVENTH QUESTION TO BE DETERMINED:

*Was the original order of the Industrial Commission a final order from which plaintiffs in error had to appeal within fifteen days under '53 C.R.S., 81-14-6?*

This question is answered in the negative.

The applicable part of the statute reads:

" * * * The award of said commission shall be final unless a petition to review same shall be filed by an interested party. * * * Such petition must be filed within fifteen days after the entry of any referee's order or award of the commission unless further time * * *." '53 C.R.S., 81-14-6.

'53 C.R.S., 81-14-7, then provides that:

"No action, proceeding or suit to set aside, vacate or amend any finding, order or award of the commission, or to enjoin the enforcement thereof, shall be brought unless the plaintiff shall have first applied to the commission for a review as provided in section 81-14-6. Such action, proceeding or suit must be commenced within

twenty days after the final finding, order or award entered by the commission upon such review."

■ Here it is clear that the original Commission Order of January 25, 1956, was interlocutory. The Commission has continuing jurisdiction until a final award is made either by terminating benefits or by ordering benefits to continue as provided by law. The claimant's own attorney originally so viewed the matter for at the first hearing he is quoted in the record as saying: "We would like also to go on record as asking that there be no finding today on permanent disability of any sort. * * * " *Carlson v. Ind. Com., et al.*, 79 Colo. 124, 244 Pac. 68, cited by claimant, is not applicable to the facts in the instant case.

So finding we hold that the statutes above quoted are not applicable to prevent a determination of this writ of error.

The judgment of the trial court is affirmed except as to the payment of medical, surgical and other expenses of claimant for his operation following the accident of November 7, 1954.

MR. JUSTICE FRANTZ not participating.