**Charles B. ALLEE, Petitioner,**

v.

**CONTRACTORS, INC.; State Compensation Insurance Authority; the Industrial Claim Appeals Office of the State of Colorado; and Director, Division of Labor, State of Colorado, Respondents.**

No. 88SC229.

Supreme Court of Colorado,
En Banc.

Nov. 27, 1989.

Rehearing Denied Dec. 18, 1989.

Donald J. Fisher, Jr., P.C., Donald J. Fisher, Jr., Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Michael J. Steiner, First Asst. Atty. Gen., Carolyn A. Boyd, Asst. Atty. Gen., Denver, for respondent Indus. Claim Appeals Office.

Paul Tochtrop, Eliot J. Wiener, Denver, for respondents State Compensation Ins. Fund and Contractors, Inc.

Gerald P. McDermott, Sarney, Trattler & Waitkus, P.C., William J. Mcdonald, Terry D. Gordon, Denver, for amicus curiae Colorado Trial Lawyers Ass'n.

Robert A. Weinberger, P.C., Michael E. Harr, Denver, for amicus curiae Colorado Defense Lawyers Ass'n.

Chief Justice QUINN delivered the Opinion of the Court.

This case involves the statutory program for vocational rehabilitation established in 1975 as part of the Workers' Compensation Act, §§ 8–40–101 to 8–54–127, 3B C.R.S. (1986 & 1989 Supp.), and later repealed as of January 1, 1987.[1] The question is whether a partially disabled worker, who was awarded temporary partial disability benefits for an industrial injury sustained prior to July 1, 1987, and who was ordered by an administrative law judge to undergo evaluation for vocational rehabilitation, is entitled to receive temporary partial disability benefits during the period of time commencing with the worker's attainment of maximum medical improvement and terminating with either the worker's enrollment in a vocational rehabilitation program or the entry of an administrative order that vocational rehabilitation is not necessary to render the worker fit for a remunerative occupation. In *Allee v. Contractors, Inc.*, 761 P.2d 250, (Colo.App.1988), the court of appeals held that a disabled worker's right to temporary partial disability benefits terminates once the worker reaches maximum medical improvement, with the result that temporary partial disability benefits are not available during the interim period from the worker's attainment of maximum medical improvement until either the worker actually commences a vocational rehabilitation program or until an administrative law judge rules against the worker on the worker's need for vocational rehabilitation. We conclude that when, as here, a worker

---

1. The repeal is found at ch. 51, sec. 21, § 8–49–101(4) & (5), 1987 Colo.Sess.Laws, 387, 393.

has suffered a disabling industrial injury prior to July 1, 1987, and has been awarded temporary partial disability benefits and has also been ordered to undergo evaluation for vocational rehabilitation, the worker is entitled to receive temporary partial disability benefits until such time as he actually commences a vocational rehabilitation program or an administrative determination is made that vocational rehabilitation is unnecessary. We accordingly reverse the judgment of the court of appeals and remand the case with directions to return it to the Industrial Claim Appeals Panel for further proceedings.

## I.

Charles B. Allee, the workers' compensation claimant, was employed by Contractors, Inc. as a field mechanic. On September 9, 1985, Allee fell from a tractor during the course of his employment and tore some cartilage in his left knee. Approximately one month following this injury, Allee underwent arthroscopic knee surgery and, after receiving physical therapy for two weeks, was informed by his treating physician that he was able to return to work. Allee, however, did not return to work because the knee injury prevented him from performing his duties.

On December 13, 1985, Contractors' company physician examined Allee and concluded that he could return to his job without any restrictions. Allee then sought the advice of another physician who, on January 10, 1986, concluded that Allee was unable to return to work because he had some degree of permanent impairment and had not yet reached maximum recovery. Later, on April 18, 1986, this same physician determined that Allee had a four percent permanent partial disability as a result of the industrial injury.

In January, 1986, Contractors admitted liability for temporary total disability benefits from September 11, 1985, the date of Allee's injury, to December 13, 1985, the date on which, according to Contractors' company physician, Allee was able to return to work. Allee objected to the discontinuation of temporary total disability benefits on December 13, 1985, and requested a hearing on temporary and permanent disability benefits and vocational rehabilitation.

On August 20, 1986, a hearing was conducted before an administrative law judge,[2] who determined that Allee was entitled to temporary total disability benefits until March 1, 1986, the date on which Allee began part-time work on miscellaneous mechanic jobs. The administrative law judge also determined that Allee was entitled to temporary partial disability benefits from March 1, 1986, until August 20, 1986, the date of the hearing, on the basis of Allee's diminished earnings during that period of time.[3] The administrative law judge also ordered that Allee be evaluated for vocational rehabilitation, but did not determine whether Allee had reached maximum medical improvement.

On June 26, 1987, a vocational evaluator filed a report with the Industrial Claim Appeals Office, stating that Allee was ineligible for vocational rehabilitation because he had transferable skills which were "readily marketable" at a wage level equal to that of his former employment. Allee challenged this determination and requested the administrative law judge to declare him eligible for vocational rehabilitation. Before Allee's challenge was resolved, however, Contractors and its insurance carrier petitioned the Industrial Claim Appeals Panel (panel) to review the administrative law judge's order awarding Allee

**2.** Pursuant to section 8-53-101, 3B C.R.S. (1989 Supp.), the director of the division of labor and administrative law judges have original jurisdiction to hear and decide all matters arising under the Workers' Compensation Act.

**3.** Between March 1 and August 20, 1986, Allee earned $2,162 on part-time jobs, which was far below what he would have earned with Contrac-

tors if he had not been injured. The administrative law judge found that Allee, based on his average weekly wage with Contractors, would have earned $13,500 if he had been working for Contractors from December 13, 1985, the date of his injury, until August 20, 1986, the date of the administrative hearing.

temporary partial disability benefits from March 1 to August 20, 1986.

The panel set aside that portion of the administrative order that awarded Allee temporary partial disability benefits subsequent to April 18, 1986, the date on which Allee's treating physician determined that he had a four percent permanent partial disability. Because, in the panel's view, there was no evidence that Allee's condition remained unstable after April 18, 1986, the panel remanded the case to the administrative law judge with instructions to determine the date of Allee's maximum medical improvement.

Allee appealed the panel's denial of temporary partial disability benefits to the court of appeals. The court of appeals affirmed the panel's ruling and, in so doing, relied on two provisions of the workers' compensation scheme: section 8–51–103, 3B C.R.S. (1986), and Part V(D)(5) of the Workers' Compensation Rules of Procedure, 7 Colo.Code of Reg. 1101–3, p. 10 (1983). Section 8–51–103 provides that in case of temporary partial disability, an employee is entitled to receive sixty-six and two-thirds percent of the impairment of his earning capacity "during continuance thereof." Part V(D)(5) of the Workers' Compensation Rules states that an insurance carrier is to provide temporary disability benefits "if applicable" until implementation of the vocational rehabilitation program. In the court of appeals' view, any residual disability subsequent to Allee's attainment of maximum medical improvement "is no longer temporary, but permanent" within the meaning of section 8–51–103, and temporary total disability benefits after the attainment of maximum medical improvement would not be "applicable" within the intendment of Part (V)(D)(5). 761 P.2d at 252–53.

We granted Allee's petition for certiorari to review the court of appeals decision. We conclude that, based upon an examination of the text, structure, and purpose of the Workers' Compensation Act, a partially disabled worker such as Allee, who has been awarded temporary partial disability payments and has been ordered to undergo vocational rehabilitation evaluation, is entitled to receive temporary partial disability benefits after his attainment of maximum medical improvement until such time as he either commences a vocational rehabilitation program or an administrative determination is made that vocational rehabilitation is not reasonably necessary to render him fit for a remunerative occupation.

II.

Allee's entitlement to temporary partial disability benefits depends upon an analysis of those provisions of the Workers' Compensation Act that were in effect at the time of his industrial injury and during the course of the administrative proceedings on his claim. Our analysis of the statutory scheme necessarily proceeds from the long-established rule that a statute should be construed in a manner that gives effect to the legislative purpose underlying its enactment. *E.g., Colorado Common Cause v. Meyer,* 758 P.2d 153, 160 (Colo.1988); *S.G.W. v. People,* 752 P.2d 86, 87 (Colo.1988); *Engelbrecht v. Hartford Accident and Indemnity Co.,* 680 P.2d 231, 233 (Colo.1984). The purpose of the Workers' Compensation Act is "to relieve injured workers from the adverse economic effects caused by a work-related injury or occupational disease." *Grover v. Industrial Commission,* 759 P.2d 705, 709 (Colo.1988); *see also, e.g., City of Boulder v. Payne,* 162 Colo. 345, 350, 426 P.2d 194, 197 (1967); *Vanadium Corporation v. Sargent,* 134 Colo. 555, 562, 307 P.2d 454, 459 (1957). It is in light of this purpose that we have consistently construed the Workers' Compensation Act liberally in favor of the interests of injured workers. *E.g., Grover,* 759 P.2d at 705; *Padilla v. Industrial Commission,* 696 P.2d 273 (Colo.1985); *James v. Irrigation Motor and Pump Co., Inc.,* 180 Colo. 195, 503 P.2d 1025 (1972).[4]

---

4. In 1989 the General Assembly enacted section 8–41–101.5, 3B C.R.S. (1989 Supp.), which states that "disputes concerning facts in workmen's compensation cases are not to be given a broad liberal construction in favor of the employee on the one hand or of the employer on the other

■ The statutory scheme provides benefits for four separate categories of disabilities: temporary total disability, § 8–51–102, 3B C.R.S. (1986); temporary partial disability, § 8–51–103, 3B C.R.S. (1986); permanent total disability, § 8–51–107, 3B C.R.S. (1986); and permanent partial disability, § 8–51–108, 3B C.R.S. (1986).[5] The term "disability" means industrial disability or loss of earning capacity and not mere functional disability unrelated to industrial performance. *Byouk v. Industrial Commission,* 106 Colo. 430, 434, 105 P.2d 1087, 1089 (1940); *see also Vail Associates, Inc. v. West,* 692 P.2d 1111, 1114 (Colo.1984). It is an obvious fact of industrial life that a disabled worker might attain maximum medical improvement from an industrial injury or occupational disease and still not have reached maximum industrial efficiency. In recognition of this fact, the General Assembly in 1975 enacted into law a statutory program for vocational rehabilitation.

The statutory vocational rehabilitation program applicable here requires every employer to provide not only medical and hospital treatment for injured employees but also vocational rehabilitation. § 8–49–101(1)(a), 3B C.R.S. (1986). Such vocational rehabilitation includes "tuition, fees, transportation, and weekly maintenance equivalent to that which the employee would receive under section 8–51–102 [temporary total disability benefits] for the period of time that the employee is attending a vocational rehabilitation course." Section 8–49–101(1)(a) thus expressly incorporates the temporary total disability benefits of section 8–51–102 into the vocational rehabilitation program and converts those benefits into weekly income maintenance for workers during the period of vocational rehabilitation. The specific details of the vocational rehabilitation program are codified at subsection (4) of section 8–49–101 in the following manner:

> Every employee who has suffered an injury covered by this article shall be entitled to vocational rehabilitation at a facility or institution approved by the division [of labor] when, as a result of the injury or occupational disease, he is unable to perform work for which he has previous training or experience. Such vocational rehabilitation services shall continue for such period of time as may be reasonably necessary, not exceeding twenty-six weeks, for the purpose of restoring the employee to suitable employment. The director [of the Division of Labor], on good cause shown, may extend, for an

hand." In the instant case, however, there is no dispute as to the facts, and we do not deal with an issue relating to administrative fact-finding. Rather, we deal with a question of statutory construction with respect to undisputed facts which predated the enactment of section 8–41–101.5. That statute, therefore, has no bearing on our resolution of this case.

**5.** The statutory scheme in existence at the time of Allee's injuries provided as follows: in the case of temporary total disability of more than three days, an employee was entitled to receive sixty-six and two-thirds percent of his average weekly earnings so long as such disability was total, not to exceed a maximum of eighty percent of the state average weekly wage, § 8–51–103, 3B C.R.S. (1986); in the case of partial disability, an employee was entitled to receive sixty-six and two-thirds percent of the impairment of his earning capacity during the continuation of temporary partial disability, not to exceed a maximum of eighty percent of the state average weekly wage, § 8–51–103, 3B C.R.S. (1986); in the case of permanent total disability, an employee was entitled to receive sixty-six and two-thirds percent of the average weekly wage of the injured employee and such benefits were to continue until the death of the disabled person, but could not be in excess of the weekly maximum benefits for temporary total disability, § 8–51–107(1), 3B C.R.S. (1986); in case of permanent partial disability, the employee was entitled to an award based on scheduled disability payments for certain specifically listed injuries, and in other cases to an award based on the extent of general permanent disability, expressed as a percentage and calculated on the basis of the employee's life expectancy (life expectancy could not be reduced if the industrial injury or occupational illness was a direct cause of the reduced life expectancy) and the employee's general physical condition, mental training, ability, former employment, and education, and the award was to be calculated by ascertaining the total amount of earnings which the employee would receive during the balance of his expectancy at the rate of $84 per week and then by multiplying that sum by the percentage of general permanent disability found to exist, but in no event was the award to exceed $26,292, payable at a weekly rate of not more than $84, § 8–51–108, 3B C.R.S. (1986).

additional period not to exceed twenty-six weeks, the vocational rehabilitation treatment or services required. In no event shall the total time exceed fifty-two weeks for the rehabilitation services provided pursuant to this subsection (4) or for the payment of income maintenance benefits as provided in paragraph (a) of subsection (1) of this section. If such services are not voluntarily offered by the employer or his insurance carrier and accepted by the employee, the director, on his own motion or upon application of any party in interest, may refer the employee to a qualified physician or facility for evaluation of the practicability of, need for, and kind of service, treatment, or training necessary and appropriate to render the employee fit for a remunerative occupation. Upon a showing that vocational rehabilitation is reasonably necessary, the director may order services and treatment recommended or such other rehabilitation, treatment, or service as he may deem necessary, such rehabilitation, treatment, or service to be provided and paid for in the same manner and with the same limitations as provided in paragraph (a) of subsection (1) of this section.

The express reference in subsection 8–49–101(4) to an employee's inability to perform work for which he had prior training and experience is a clear indication that vocational rehabilitation was to be limited to those employees who, as a result of an industrial injury or occupational disease, sustained a permanent industrial disability. See Freilinger v. Gates Rubber Co., 733 P.2d 1214, 1216 (Colo.App.1987). Without a permanent industrial impairment, therefore, an employee would not be able to satisfy the "statutory criterion of being 'unable' to perform work." Id.

The statutory vocational rehabilitation program further provides that when a claimant is unable to perform the work for which he had prior training or experience and needs vocational rehabilitation, the existence and extent of the worker's permanent industrial disability should not be determined until the worker has completed the vocational rehabilitation program. The

General Assembly acknowledged as much when it enacted subsection 8–49–101(5), 3B C.R.S. (1986), which stated:

Any employee who is found to be eligible for vocational rehabilitation shall not have his degree of permanent partial disability determined until he has completed his vocational rehabilitation program. In the event the employee voluntarily, without good cause, withdraws from such rehabilitation program, the degree of permanent partial disability shall be determined as though the employee had successfully completed the vocational rehabilitation program.

It is in light of the above statutory scheme that we must determine whether Allee was entitled to temporary partial disability benefits pending a decision by the administrative law judge as to whether a vocational rehabilitation program was reasonably necessary to render Allee fit for a remunerative occupation. We now turn to that issue.

### III.

In concluding that Allee was not entitled to temporary disability benefits while undergoing vocational rehabilitation evaluation, the court of appeals gave conclusive effect to the fact that Allee had reached maximum medical improvement. The court of appeals supported its holding by drawing upon section 8–51–103, 3B C.R.S. (1986), and Part V(D)(5) of the Workers' Compensation Rules of Procedure, 7 Colo. Code of Reg., 1101–3, p. 10 (1983). In our view, neither section 8–51–103 nor Part (V)(D)(5) provides support for the court of appeals' holding and, more importantly, that holding is at odds with the overriding statutory goal of relieving a disabled worker from the adverse economic consequences caused by a work-related injury or occupational disease.

### A.

Section 8–51–103, 3B C.R.S. (1986), states that where an employee has sustained temporary partial disability, "the employee shall receive sixty-six and two-thirds per-

cent of the impairment of his earning capacity during the continuance thereof." Interpreting the word "thereof" to refer to "temporary partial disability," the court of appeals concluded that "[o]nce the claimant reaches maximum medical improvement, any residual disability is no longer temporary, but permanent." 761 P.2d at 252. Such interpretation erroneously treats the attainment of maximum medical improvement as the exclusive basis for assessing a worker's industrial disability and thereby vitiates the central role played by vocational rehabilitation in the statutory scheme.

1.

■ Maximum medical improvement exists when the underlying condition has stabilized to the extent that no further medical treatment will improve the condition. 2 A. Larson, *Workmen's Compensation Law* § 57.12 (1983).[6] The statutory scheme in effect at the time of Allee's injury requires vocational rehabilitation benefits to be available to an injured employee who, as a result of an industrial injury, is unable to perform work "for which he has previous training or experience." § 8–49–101(4), 3B C.R.S. (1986). Such statutory requirement is an implicit acknowledgement that a worker could be severely disabled from a medical standpoint but still be capable of vocational rehabilitation in a manner that could reduce the worker's overall permanent industrial disability. *See Freilinger*, 733 P.2d at 1216.

■ An award of permanent partial disability must be based on such factors as the employee's life expectancy, unaltered by any reduction in such expectancy due to the industrial injury or occupational illness, and, in addition, the employee's "general physical condition and mental training, ability, former employment, and education." § 8–51–108(1)(b), 3B C.R.S. (1986). Clearly, the extent to which a rehabilitation program is successful might have a significant impact upon the degree of the employee's permanent industrial disability. *Freilinger*, 733 P.2d at 1216. While maximum medical improvement and the extent of medical disability is an important component of industrial disability, it is by no means the only factor to consider in assessing the nature and extent of permanent industrial disability. *Id.*

■ In recognition of the significance of vocational rehabilitation as a reliable factor in assessing the extent of an employee's permanent industrial disability, section 8–49–101(5), 3B C.R.S. (1986), expressly mandates the postponement of any determination of permanent partial disability until the completion of the vocational rehabilitation program whenever a worker was found to be eligible for vocational rehabilitation. This legislative mandate is a recognition of the obvious proposition that an effective program of vocational rehabilitation can mitigate the effects of a medical disability by restoring the worker to a higher level of industrial capacity than would

6. The concept of "maximum medical improvement" was not mentioned in the pre–1987 statutory scheme relating to disability benefits. Prior to the enactment of the vocational rehabilitation statutory program in 1975, there was an occasional oblique reference in opinions to such concepts as maximum medical improvement or medical recovery. *See Vanadium Corporation v. Sargent*, 134 Colo. 555, 307 P.2d 454 (1957); *Morrison v. Clayton Coal Co.*, 116 Colo. 501, 181 P.2d 1011 (1947). Since the enactment of the vocational rehabilitation program in 1975, there have been several references in court of appeals' opinions to maximum medical improvement as a predicate for the cessation of temporary disability benefits. *See Eastman Kodak Co. v. Industrial Commission*, 725 P.2d 107 (Colo.App. 1986) (temporary disability benefits payable until employee reaches maximum medical improvement); *Monfort of Colorado v. Husson*, 725

P.2d 67 (Colo.App.1986) (temporary total disability benefits not payable after client reached maximum medical improvement); *Golden Age Manor v. Industrial Commission*, 716 P.2d 153 (Colo.App.1985) (upon finding of maximum medical improvement, claimant's right to temporary disability benefits terminated); *Collins v. Industrial Commission*, 676 P.2d 1270 (Colo.App. 1984) (claimant not entitled to temporary total disability benefits during period postdating attainment of maximum medical improvement). To the extent that these court of appeals' decisions might be read as precedent for the cessation of temporary disability benefits in the case of an injured employee who has reached maximum medical improvement but is undergoing evaluation for a vocational rehabilitation program and is awaiting an administrative decision on his need for such a program, they are expressly overruled.

otherwise exist if vocational rehabilitation had not taken place. It makes little sense, in our view, to require the continuation of weekly maintenance payments equivalent to temporary total disability benefits for the period of time that a disabled employee is attending vocational rehabilitation—as section 8–49–101(1)(a) requires—and, at the same time, to construe the statutory provision for temporary partial disability benefits as terminating upon the worker's attainment of maximum medical improvement, notwithstanding the fact that the worker has been ordered by an administrative law judge to undergo vocational rehabilitation evaluation. The termination of temporary partial disability benefits under such circumstances results in depriving the employee of a needed income source during the period intervening between the entry of an order requiring the employee to undergo vocational rehabilitation evaluation and the administrative determination regarding the employee's need for vocational rehabilitation. In contrast, the continuation of temporary partial disability benefits pending an administrative decision on the employee's need for vocational rehabilitation enhances the employee's opportunity to participate in a program calculated to increase his industrial skills and to reduce his permanent industrial disability. *See Bignell v. Wise Mechanical Contractors*, 651 P.2d 1163 (Alaska 1982) (although Alaska Workers' Compensation Act makes no provision for temporary disability benefits during course of vocational rehabilitation, court holds such benefits payable to employee whose medical condition has stabilized and who is pursuing approved vocational rehabilitation program); *Industrial Indemnity Company v. Workers' Compensation Appeals*, 165 Cal.App.3d 633, 211 Cal.Rptr. 683 (1985) (injured worker who in good faith requests vocational rehabilitation benefits is entitled to temporary disability indemnity during evaluation period, even though it ultimately may be determined that employee does not qualify for vocational rehabilitation).

## 2.

The insurance carrier and the employer, on the one hand, and the Industrial Claim Appeals Office and the Division of Labor, on the other, suggest different interpretations of the statutory scheme. In urging us to affirm the decision of the court of appeals, the insurance carrier and the employer argue that in the event a disabled worker were to continue to receive temporary partial disability benefits during the pendency of a vocational rehabilitation evaluation and after the worker has attained maximum medical improvement, the disabled worker would have no incentive to commence a vocational rehabilitation program. We find this argument devoid of merit.

One of the primary goals in referring a worker to vocational rehabilitation is to restore the worker's industrial capacity—a goal clearly in the interests of the worker. In addition, section 8–49–101(1)(a), 3B C.R.S. (1986), provides that upon commencement of a vocational rehabilitation program the temporary disability benefits are to be replaced by the weekly maintenance payments at a rate equivalent to temporary total disability benefits during the continuation of the program. In the event a worker voluntarily, without good cause, were to withdraw from a vocational rehabilitation program, he would forfeit his right to the income maintenance benefits, since he would not be "attending" the program as required by section 8–49–101(1)(a), 3B C.R.S. (1986). Under such circumstances, the worker's degree of permanent disability would be determined pursuant to section 8–49–101(5), 3B C.R.S. (1986), as though he "had successfully completed the vocational rehabilitation program." A worker, therefore, has as much incentive as the employer or insurance carrier to expedite the vocational rehabilitation evaluation as quickly as possible and to diligently pursue a vocational rehabilitation program deemed necessary to render the worker fit for a remunerative occupation.

In urging us to reverse the decision of the court of appeals, the Industrial Claim Appeals Office and the Division of Labor argue for a construction of the pre–1987 statutory scheme that would permit an award of temporary partial disability bene-

fits to workers who have reached maximum medical improvement and are awaiting the outcome of a vocational rehabilitation evaluation only if an administrative decision is made that the worker is in need of vocational rehabilitation, but not if an administrative decision is made to the contrary. Such a construction, in our view, would not be in furtherance of the beneficent purpose of the Workers' Compensation Act.

The postponement of payments until it is administratively determined that the worker is in need of vocational rehabilitation would not serve to undo the worker's need for such benefits during the period prior to the ruling. This period might be several months. If the administrative decision is that the worker is not in need of vocational rehabilitation, the worker will have been deprived of disability income during the period when he is most in need of subsistence—namely, while he is undergoing a vocational rehabilitation evaluation and is awaiting a decision on a vocational rehabilitation program. Such a construction would actually discourage a partially disabled worker from seeking vocational rehabilitation for fear of suffering economic loss in the event of ultimate rejection—a result neither conducive to the interest of the·worker nor to the industrial community.

### 3.

It is worth noting that the General Assembly, as evidenced by the 1987 legislation repealing the statutory vocational rehabilitation program previously created by section 8–49–101(4) and (5), 3B C.R.S. (1986), knew how to express its intent to terminate temporary disability benefits upon a worker's attainment of maximum medical improvement. The 1975 statutory vocational rehabilitation program for partially disabled workers was repealed in 1987 with respect to all work-related injuries or occupational diseases occurring on or after July 1, 1987. Ch. 51, sec. 21, 1987 Colo.Sess.Laws 387, 393. The General Assembly, in the same act, amended the statutory provisions relating to temporary partial disability to state that "temporary partial disability payments shall cease when the employee reaches maximum improvement from medical care or as otherwise

determined by the director." Ch. 51, sec. 4, 1987 Colo.Sess.Laws 387, 388. This same 1987 legislation also authorizes an employer to offer vocational rehabilitation to a "totally disabled employee capable of rehabilitation to suitable qualified employment," Ch. 51, sec. 6, § 8–51–107, 1987 Colo.Sess.Laws 387, 389, and further provides that "[e]xcept where vocational rehabilitation is offered [to such totally disabled employee], temporary total disability payments shall cease when the employee reaches maximum medical improvement from medical care or returns to work or is able to return to work or as otherwise determined by the director." Ch. 51, sec. 3, § 8–51–102, 1987 Colo.Sess.Laws 387, 388.

■ Where, as here, a statutory scheme creating substantial rights for disabled workers is amended in significant particulars and partially repealed, the conclusion is inescapable that the General Assembly intended to change the pre-existing state of the law. *See Kern v. Gebhardt,* 746 P.2d 1340, 1345 n. 3 (Colo.1987); *Bar 70 Enterprises, Inc. v. Tosco Corp.,* 703 P.2d 1297, 1304 n. 5 (Colo.1985); *People v. Hale,* 654 P.2d 849, 851 (Colo.1982). The absence of any language in the pre–1987 statutory scheme regarding termination of temporary partial disability benefits when the disabled worker has reached maximum medical improvement and has been ordered to undergo vocational rehabilitation evaluation by an administrative law judge fortifies the conclusion that the General Assembly did not intend to terminate such benefits until such time as the worker either commences a vocational rehabilitation program or an administrative determination is made, pursuant to section 8–49–101(4), 3B C.R.S. (1986), that vocational rehabilitation is not reasonably necessary to render the worker fit for a remunerative occupation. We thus conclude that the court of appeals mistakenly relied on section 8–51–103 in denying temporary partial disability benefits to Allee under the particular circumstances of this case.

### B.

The court of appeals also relied upon Part V(D)(5) of the Workers' Compensation

Rules of Procedure, 7 Colo.Code of Reg. 1101–3, p. 10 (1983), which states in relevant part that "[t]he insurance carrier shall continue to provide temporary disability benefits *if applicable* until implementation of the [vocational rehabilitation] plan and the employee begins his vocational rehabilitation program." (Emphasis added). Since Allee reached maximum medical improvement on or before April 18, 1986, the court of appeals concluded that, for purposes of Part V(D)(5), temporary disability benefits were not "applicable" after that date and prior to the commencement of a vocational rehabilitation program. 761 P.2d at 252. We disagree with this analysis.

An employee may be eligible for a vocational rehabilitation program even though temporary partial disability benefits have been suspended. For example, temporary partial disability benefits may be suspended when an employee engages in an unsanitary or injurious practice tending to imperil or retard his recovery, or the employee refuses to submit to medical or surgical treatment essential to promote his recovery. § 8–51–110(3), 3B C.R.S. (1986). Temporary partial disability benefits may also be suspended when an employer continues to pay an injured employee otherwise entitled to such benefits a sum in excess of those benefits for "so long as

such employee is eligible for temporary disability benefits." § 8–52–107(3), 3B C.R.S. (1986). In light of these statutory provisions, we believe the term "if applicable" in Part V(D)(5) is intended to refer to those situations in which temporary disability benefits have already been awarded and have not been suspended due to statutory cause.

When, therefore, an injured worker has already been awarded temporary disability benefits and has been ordered to undergo vocational rehabilitation evaluation as a prelude to a determination of permanent industrial disability, temporary disability benefits previously awarded would be "applicable" within the intendment of Part V(D)(5) until there has been a valid determination as to whether vocational rehabilitation is reasonably necessary to render the employee fit for a remunerative occupation. We accordingly reject the court of appeals' interpretation of and reliance upon Part V(D)(5) of the Workers' Compensation Rules of Procedure in terminating Allee's temporary disability payments under the circumstances present here.[7]

## IV.

In summary, we hold that a partially disabled worker who sustained an industrial injury prior to July 1, 1987, and has been ordered to undergo vocational rehabilitation evaluation, is entitled to receive tempo-

---

**7.** While the director of labor is vested with authority to promulgate rules relating to the administration of the Workers' Compensation Act, § 8–46–108, 3B C.R.S. (1986), such rules must be consistent with the basic purposes of that legislation. If Part V(D)(5) was intended to *terminate temporary disability benefits* upon a disabled worker's attainment of maximum medical improvement, even though the worker had been ordered to undergo a vocational rehabilitation evaluation and a final administrative decision had not yet been reached on the worker's need for vocational rehabilitation, we would have no hesitation in invalidating such a rule as contrary to the overriding role of providing a disabled worker with a basic source of subsistence income pending the determination of permanent industrial disability. We need not resort to that course, however, because we do not adopt the court of appeals' restrictive interpretation of Part V(D)(5).

Furthermore, we also point out that the Rule V(4) of the Workers' Compensation Rules of

Procedure promulgated in 1976 stated that "in *no event* shall implementation of [the vocational rehabilitation] plan take place later than the termination of temporary total disability or temporary partial disability, whichever is longer." The obvious purpose of this rule was to provide the worker with temporary disability benefits until such time as vocational rehabilitation actually commenced, at which point the weekly income maintenance would commence. If the director of the division of labor had intended Part V(D)(5) of the 1986 Workers' Compensation Rules of Procedure to substantially amend the pre-existing regulations by terminating temporary disability benefits merely upon the worker's attainment of maximum medical improvement, notwithstanding the fact that the worker had been *ordered to undergo a vocational* rehabilitation evaluation and was awaiting an administrative decision on his need for vocational rehabilitation, we can only assume that the director would have employed language much more indicative of that intent than the "if applicable" language of Part V(D)(5).

rary partial disability benefits between the time when the worker attains maximum medical improvement and the time when the worker either commences a vocational rehabilitation program or an administrative determination is made that vocational rehabilitation is unnecessary to render the worker fit for a remunerative occupation. This holding is consistent with the purpose of basic workers' compensation legislation, which is to relieve a disabled worker of some of the adverse economic effects caused by a work-related injury or occupational disease. The continuation of temporary partial disability benefits while a disabled worker is awaiting the administrative judge's ruling on the need for vocational rehabilitation provides the worker with a strong incentive to pursue vocational rehabilitation for the purpose of restoring his industrial proficiency, while concomitantly reducing his permanent industrial disability, and thereby furthers the interest of the worker as well as the interest of society at large.

We accordingly reverse the judgment of the court of appeals and remand the case to that court with directions to return the case to the panel for further proceedings consistent with the views herein expressed.

MULLARKEY, J., does not participate.