No. 15,867.

STATE COMPENSATION INSURANCE FUND ET AL. *v.*
BATIS ET AL.
(183 P. [2d] 891)

Decided June 30, 1947.

1

2

Mr. HAROLD CLARK THOMPSON, Mr. LOUIS SCHIFF, for plaintiffs in error.

Mr. L. F. BUTLER, Mr. EDWARD L. WOOD, Mr. BURTON CRAGER, Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, BARBARA LEE, Assistant, for defendants in error.

MR. JUSTICE HAYS delivered the opinion of the court.

GEORGE BATIS, a coal miner, under circumstances, pres-

ently to be stated, was awarded compensation by the Industrial Commission of Colorado against the Union Coal Operating Company, a copartnership, the employer, and State Compensation Insurance Fund, the insurer, for injuries received to his left arm and left eye as a result of an automobile accident occurring while he was going to work. Being dissatisfied with the award, the State Fund and Coal Company instituted an appropriate action in the district court under the provisions of section 378, chapter 97, '35 C.S.A., against Batis, the Industrial Commission, Moynihan and the Travelers Company to procure a vacation of the findings and award of the commission and for the entry of judgment denying the claim. On due hearing the court upheld the orders of the commission, and the cause is presented here for a consideration and determination of the legal questions involved.

Only two questions are presented for our consideration: (1) Is Batis entitled to compensation? (2) If so, who is liable for the payment thereof, State Compensation Insurance Fund, or the Travelers Insurance Company?

With respect to the first question, section 294, chapter 97, '35 C.S.A., authorizes recovery where the "employee is performing service arising out of and in the course of his employment," or "Where the injury * * * is proximately caused by an accident arising out of and in the course of his employment, * * *."

Does Batis come within the purview of the above statute? The pertinent facts with respect to the first point are, that the claimant resided at Oak Creek, Colorado, and the coal mine in which he was employed was located at Phippsburg, a distance of approximately four miles from that town. He rode to and from his work in a pickup truck furnished by his employer. On September 29, 1945, while going to his work the pickup truck collided with another car, resulting in claimant's injuries, for which he was awarded compensation.

4

■■ The general rule as to liability where the accident occurs upon a street or highway from causes to which the public generally is exposed is announced in *Industrial Commission v. Anderson,* 69 Colo. 147, 169 Pac. 135, as follows: "In the absence of special circumstances bringing the accident within the scope of the employment, * * * no compensation is recoverable by a workman who is injured while on his way to or from his work," and numerous cases are cited in which compensation was judicially denied to workmen injured on public thoroughfares.

There are, however, well recognized exceptions to the above rule, which exceptions also are noted in the above case, where there exists special circumstances bringing the accident within the scope of employment or where by the contract of employment the employer agreed to furnish transportation. *Comstock v. Bivens,* 78 Colo. 107, 239 Pac. 869; *State Fund v. Industrial Com.,* 89 Colo. 426, 3 P. (2d) 414; *Wells v. Cutler,* 90 Colo. 111, 6 P. (2d) 459; *Skaggs Co. v. Nixon,* 101 Colo. 203, 72 P. (2d) 1102; *Industrial Com. v. Hayden Coal Co.,* 113 Colo. 62, 155 P. (2d) 158.

In the instant case, claimant testified that as a part of his contract of employment his employer had agreed to furnish him with free transportation to and from his work. While there was positive evidence to the contrary, the referee found, "As one of the terms of the contract of said employment, the said Union Coal Operating Company agreed to transport the claimant from his place of residence to the place of his work. * * * On September 29, 1945, while being transported from the place of his residence to the place of his work by said subcontractor the claimant suffered injuries accidentally incurred arising out of and in the course of his employment." The above finding of the referee was approved, affirmed and adopted by the Industrial Commission and the district court, and we, are bound thereby.

The principal question involved herein is, Who is liable for the payment of the compensation awarded, the State Compensation Fund or the Travelers Insurance Company? The facts necessary for a proper consideration of the above question are in substance: The Union Coal Operating Company, a copartnership, herein referred to as the Coal Company, consisting of W. M. Ross, L. K. Spitzer, J. C. Moore, and Paul J. Moynihan, began the operation of the Seven Points coal mine located near Phippsburg, Colorado, October 5, 1944, and continued to September 17, 1945, when by subcontract or sublease the operation thereof was turned over to Moynihan, one of the partners; Moynihan was in active charge of said mine at the time of the accident herein in question and had been foreman of the mine for the partnership prior to the date of said subcontract; the pickup truck involved in the accident with the name "Moynihan" painted on the side thereof was at all times owned by Moynihan, but used by the partnership; at the time of the accident, September 29, 1945, and at all times from October 13, 1944, to October 1, 1945, there was in full force and effect a policy of compensation insurance on the State Compensation Insurance Fund, herein called Fund, covering all employees of the Coal Company; the Fund was not notified until four days after the accident, to wit, October 2, 1945, that the Coal Company had contracted out the operation of the mine and no notice of cancellation was given by the Fund to the Coal Company until December 3, 1945, two months after the accident; no proof was furnished by the Coal Company to the Fund at any time that Moynihan had become an employer and secured compensation insurance as required by endorsement on said policy, and authorized by statute. Section 328, chapter 97, '35 C.S.A. provides: "Any person, company or corporation operating or engaging in or conducting any business by leasing, or contracting out any part or all of the work thereof to any lessee, sub-lessee, contractor or sub-contractor,

shall irrespective of the number of employees engaged in such work, be construed to be and be an employer as defined in this article, and shall be liable as provided in this article to pay compensation for injury or death resulting therefrom to said lessees, sub-lessees, contractors, sub-contractors and their employees, and such employer as in this section defined shall, before commencing said work insure and shall keep insured his liability as herein provided and such lessee, sub-lessee, contractor, or sub-contractor, as well as any employee of such lessee, sub-lessee, contractor or sub-contractor, shall each and all of them be deemed employees as defined in this article. Such employer shall be entitled to recover the cost of such insurance from said lessee, sub-lessee, contractor, or sub-contractor, and may withhold and deduct the same from the contract price or any royalties or other money due, owing or to become due said lessee, sub-lessee, contractor, or sub-contractor; *provided, however, that if said lessee, or sub-lessee, contractor or sub-contractor doing any work as in this section provided shall himself be an employer as defined in this article in the doing of such work and shall before commencing said work insure and shall keep insured his liability for compensation as herein provided then and in that case such person, company or corporation operating, engaged in, or conducting said business shall not be subject to the provisions of this section.* [L. '19, p. 717, §49; C.L., §4423.]" (Italics ours.)

The Basic Manual of Rules of the commission as set forth in the stipulation between the parties, provides: "2. Underwriting Basis. The liability under the Workmen's Compensation Act of Colorado of each legal entity shall be insured separately and the policy shall be issued by one insurance company to cover the entire operations of the legal entity within the State of Colorado, whether at one or more locations; provided that, where operations are conducted by the same legal entity at more than one location, one or more policies may be issued

by the same insurance carrier, but the entire operations at a specific location shall be covered by a single policy. No insurance carrier shall issue any policy covering or purporting to cover the liability under said Act of more than one legal entity. For the purpose of this rule the term 'legal entity' shall mean and include any one of the following: person, association of persons, co-partnership, firm, private corporation, including any public service corporation, personal representative, assignee, trustee, or receiver. Policies shall be written upon the basis of the entire payroll for the operations of the legal entity which are the subject of insurance (which entire payroll shall mean and include the remuneration of contractors, sub-contractors, lessees, and sub-lessees, to the extent of $1,500 each per annum, and the entire remuneration of all employees of such contractors, sub-contractors, lessees, and sub-lessees unless the assured shall furnish his carrier with a certificate showing conclusively that such contractors, sub-contractors, lessees, and sub-lessees have maintained proper workmen's compensation insurance coverage under the aforesaid Act during the period covered by the assured's policy."

The policy of insurance issued by the Fund was executed in the light of the above statute, and rules and regulations of the commission, and the same are a part of the policy as fully as if set forth at length therein.

In the policy issued by the Fund the following was listed as the "Classification of Operations": "Coal Mining NOC—all employees—above or below ground—including Drivers, Chauffeurs, and their helpers, and including the construction, repair, alteration and maintenance of all buildings and equipment."

Item 4 of the policy provides: "The foregoing enumeration and description of employees include all persons employed in the service of this Employer, including 'constructive employees' (all persons to whom there is liability on the part of this Employer under the conditions set forth in Section 328 or Section 329, Chapter 97,

'35 C.S.A.), in connection with the business operations above described to whom remuneration of any nature in consideration of service is paid, allowed, or due, together with an estimate for the Policy Period of all such remuneration. The remuneration of 'constructive employees' shall be included in the premium computation, unless and until this Employer shall furnish proof satisfactory to the Company that he has been relieved of all liability, as to such employees as in the manner provided in said Sections 328 and 329. * * * "

Paragraph 3 of the policy provides: "3. Unless this Employer furnishes proof satisfactory to the Company for or on behalf of any lessee, sub-lessee, contractor, sub-contractor, or other person, who undertakes for this Employer any part of the business operations covered by the Policy under the conditions set forth in Section 328 or Section 329 of this Act, that such lessee, sub-lessee, contractor, sub-contractor, or other person is himself an Employer as defined in this Act in the doing of such work and had before commencing this work insured and kept insured his liability for compensation as in this Act provided, the remuneration of such lessee, sub-lessee, contractor, sub-contractor or other person, subject to a maximum individual remuneration of $1500 per annum if the actual remuneration is greater than such amount, and the remuneration of all his employees, or if this Employer does not furnish record of such remuneration, the entire contract price of such contracted or sub-contracted work, shall be included in the return of remuneration upon which premium for the Policy is computed. Such remuneration or contract price shall in all respects be governed by the same terms, conditions and requirements of the Policy as the remuneration of the direct employees of this Employer."

It is evident, in the light of the foregoing, that the policy of the Fund issued to the Coal Company, fully covers all employees of its subcontractor Moynihan in the absence of compliance by the latter with the terms

of the provisions contained in above statute. *Index Mines Corp. v. Industrial Com.*, 82 Colo. 272, 259 Pac. 1036; *McKune v. Industrial Com.*, 94 Colo. 523, 31 P. (2d) 322; *Zimmerman v. Industrial Com.*, 109 Colo. 533, 127 P. (2d) 878; *Joe Dandy Mining Co. v. Industrial Com.*, 112 Colo. 241, 148 P. (2d) 817. In order that the Coal Company may be removed from the provisions of the act, it was necessary for Moynihan "before commencing said work [to] insure and * * * keep insured his liability for compensation * * *," as provided in said act. *Alson Investment Co. v. Youngquist*, 107 Colo. 1, 108 P. (2d) 228; *Joe Dandy Mining Company v. Industrial Com., supra; Industrial Commission v. Bracken*, 83 Colo. 72, 262 Pac. 521.

In connection with the above, plaintiffs in error assert that Moynihan had fully complied with the proviso contained in the quoted statute, and that by reason thereof he had become claimant's employer, thereby relieving the Coal Company and its insurance carrier from all liability for injuries sustained by the employee.

In determining this question, the following facts and circumstances as shown by the record, become important: About nine months prior to September 17, 1945, the date of the mining subcontract, Moynihan was engaged in a separate and distinct trucking business, hauling cement from La Porte, Colorado, to the east portal of the Thompson Tunnel; to cover this operation he had procured compensation insurance from the Travelers Insurance Company, effective from December 18, 1944, to December 18, 1945; no notice was given the Travelers company that Moynihan was engaging in the mining business until after the accident here in question; no payroll reports on mining operations were ever made to, or received by the Travelers, nor did the latter receive any premium whatsoever for such operations; neither is there any indication in the record that at the time of the issuance of the policy by the Travelers that either party contemplated that such policy should also cover future

mining operations; the Travelers policy shows that it was issued to cover only Moynihan's trucking operations, and no other.

Counsel rely upon *Industrial Commission v. Insurance Co.,* 103 Colo. 419, 86 P. (2d) 970. That case does not support their contention. We there held that under the terms of the policy involved, the liability of the insurance carrier was not limited to the operations of the employer within the city limits of Florence, Colorado, in view of the statute and rules of the commission, but that said policy included the entire operations of the assured within the state.

We did not, by the above opinion, intend to hold that where one engaged in several different and distinct types of business procures compensation insurance for one of them that such insurance would extend to, and cover all employees, engaged in the other types of business.

*Cox's Case,* 225 Mass. 220, 114 N.E. 281, a case cited by plaintiffs in error, does not support their contention, for the court in its opinion says: "We do not include within the scope of this decision * * * companies * * * conducting two wholly different and distinct kinds of business quite disconnected with each other in place, nature and management. Such cases, if and when they arise, are to be considered on their own merits." Such a case did arise a few years later, viz., *Pallotta's Case,* 251 Mass. 153, 146 N.E. 235. In that case Sullivan had a compensation insurance policy covering a trucking business in which he had previously been engaged. Pallotta, an employee, was killed while digging sand to be loaded on a truck. The policy classified trucking operations in almost the same language as did the Travelers' policy in the instant case. The Industrial Accident Board made an award to Pallotta's widow, and against the insurance company, which was affirmed by the trial court. The appellate court in reversing the decree said: "The question for decision is, Does the policy cover the

services of Pallotta in his employment as a digger and loader of sand? There is no natural connection between the business of trucking and the business of digging and removing sand from a sand pit, for sale, even though the profits of such combined businesses are greater than would be attributed to the two businesses conducted separately. Pallotta when injured was not working as a driver, chauffeur or helper of such, nor as a stableman, garageman, blacksmith, repairman, or rigger. It results that the decree of the superior court must be reversed and a decree entered for the insurer."

This Massachusetts case is in harmony with our decision in *Connell v. Continental Casualty Co.*, 87 Colo. 573, 290 Pac. 274. In that case Connell was engaged in business and lived in Denver. He carried compensation insurance on all employees in his home. Cunningham, a carpenter, was employed by Connell to construct a cabin in the mountains, and while so engaged, suffered injuries, and claimed compensation therefor. We held that, "The policy of insurance covered only injuries to 'in-servants' at Connell's residence," and did not cover injuries to carpenters engaged in building a summer home for him in the mountains.

In the present case there is no natural connection between the business of trucking, which was insured with the Travelers, and the mining operations insured with the Fund. The two businesses were separate, distinct and entirely disconnected. Moynihan having failed to insure his liability in his mining operations, claimant was a constructive employee of the Coal Company, and as such, was covered by the policy of the Fund and not by the policy of the Travelers.

No error appearing, the judgment of the trial court is affirmed.

Mr. Chief Justice Burke and Mr. Justice Stone concur.