James H. CURRY, d/b/a James H. Curry Co., James Curry and Donna Curry, Petitioners,

v.

The INDUSTRIAL COMMISSION and Its Chairman, Mike L. Baca, Charles J. McGrath, Director, Division of Labor, State of Colorado, The State Compensation Insurance Fund, Merlin A. Wangerin, and Wangerin's Cabinet Shop, Respondents.

No. 82SC148.

Supreme Court of Colorado,
En Banc.

Nov. 29, 1983.

**514**

Kane, Donley & Wills, Jerry Alan Donley, Colorado Springs, for petitioners.

J.D. McFarlane, Atty. Gen., Tim Arnold, Asst. Atty. Gen., Denver, for respondents Industrial Com'n, Mike L. Baca, Charles J. McGrath, and Div. of Labor.

William J. Baum, Denver, for respondent State Compensation Ins. Fund.

Douglas R. Phillips, Denver, for respondent Merlin A. Wangerin.

KIRSHBAUM, Justice.

We granted certiorari to review a decision of the Court of Appeals which affirmed an order of the Industrial Commission denying insurance coverage to an employee of petitioner, James H. Curry (Curry). *See Curry v. Industrial Commission* (Colo.App. No. 80CA1264, Nov. 19, 1981) (not selected for official publication). We reverse and remand with directions.

The record reveals the following pertinent events. In December 1976, Curry applied for a "Standard Workmen's Compensation and Employer's Liability Policy" with the State Compensation Insurance Fund (the Fund). The application stated that Curry was a real estate appraiser, that he individually owned the business, that the business was located on Airport Road in Colorado Springs, Colorado, and that he used the trade name "James H. Curry Company." The application also indicated that the only employees of the business were "Clerical (part time)" personnel.

The Fund subsequently issued insurance policy No. 85345 to James H. Curry, d/b/a James H. Curry Company.[1] An initial estimated annual premium of twenty-five dollars was assessed by the Fund. The declarations section of the policy described the

insured as "James H. Curry DBA James H. Curry Company," and listed 3603 Airport Road as the insured's address. The policy excluded "operations conducted at or from any workplace not described ... [in the] declarations if the insured has, under the workmen's compensation law, other insurance for such operations or is a qualified self-insurer therefor ...."

The policy also contained the following provisions regarding computation of premiums:

"The insured shall maintain records of the information necessary for premium computation on the bases stated in the declarations, and shall send copies of such records to the company at the end of the policy period and at such times during the policy period as the company may direct.

. . . . . .

"The premium stated in the declarations is an estimated premium only. Upon termination of this policy, the earned premium shall be computed in accordance with the rules, rates, rating plans, premiums and minimum premiums applicable to this insurance in accordance with the manuals in use by the company. If the earned premium thus computed exceeds the premium previously paid, the insured shall pay the excess to the company; if less, the company shall return to the insured the unearned portion paid by the insured."

On January 29, 1979, Curry filed an "Audit Report" with the Fund which stated that the only employees of the business from December 1, 1977, to December 1, 1978, were "clerical office" employees.

In January 1979, Curry began construction of a private residence on Sunnybrook Lane in Colorado Springs. The project was coordinated from his Airport Road office.[2] Curry obtained the services of several persons, including Merlin Wangerin, to build

---

1. It is undisputed that this policy was in effect during the time within which the events giving rise to this action occurred.

2. Curry established a separate checking account utilizing his business address to pay all

costs of construction. Bank records and invoices were mailed to and filed at the business office, and all checks, files and other records relating to the construction of the residence were stored at the office.

the residence.[3] On March 15, 1979, Wangerin fell from the roof of the partially finished house, sustaining several permanent disabilities as a result thereof.

Wangerin subsequently filed a claim against "James H. Curry and Co." for worker's compensation benefits with the Colorado Division of Labor Workmen's Compensation Section (the Division). The Fund contested liability, pursuant to section 8–53–102, C.R.S. 1973 (1982 Cum.Supp.).[4] Curry also denied liability, asserting that at the time of the accident Wangerin was an independent contractor, not an employee of Curry. On December 3, 1979, after conducting hearings on Wangerin's claim,[5] a referee of the Division found that Wangerin was employed by Curry as a sub-contractor; that Wangerin had not secured workmen's compensation coverage for himself; that "all business dealings of the construction of the home were done through James Curry d/b/a James Curry Compa-

ny"; and that Curry "was a self-employed individual." The referee ruled that "the policy of State Compensation Insurance Fund covers all of [Curry's] business activities," including Wangerin's injuries, and ordered the Fund to increase Curry's premium, after an audit, "to reflect the additional payroll and classifications for the wages paid on the construction of the private residence."

On January 30, 1980, Curry sent a letter to the Fund stating that "although requested," he had not received any forms upon which to submit 1979 payroll information adjustments; that a total payroll for 1979 was attached; and that such payroll "includes workers who may be properly described as independent contractors, but by reason of a decision in [the claim filed by Wangerin] . . . are included in this report as employees." The attached payroll forms listed Wangerin and others as "Carpenters,

3. A letter from Wangerin to Curry, dated February 15, 1979, contained the following statements:

"I hereby confirm that I am an Independent Contractor engaged by you for certain construction work on the residence now being built at 3075 Sunnybrook Lane in Colorado Springs, Colorado. I acknowledge that as such, I am responsible for my own Workmans [sic] Compensation Insurance, Social Security taxes, and any and all other taxes, insurance and responsibilities customarily associated with the position of an Independent Contractor. I hereby confirm that I will not hold you liable for any injury or other adversity resulting from the above referenced employment."

4. Section 8–53–102, C.R.S. 1973 (1982 Cum. Supp.), states as follows:

"(1) The employer or, if insured, his insurance carrier shall notify in writing the division and the injured employee . . . within twenty-five days after notice or knowledge of an injury to an employee which . . . results in permanent physical impairment . . . of said employee, whether liability is admitted or contested. . . .

"(2) If such notice is not filed as provided in subsection (1) of this section, the employer or, if insured, his insurance carrier, as the case may be, shall become liable to the claimant, if successful in his claim for compensation, for one day's compensation for each day's failure to so notify. If the employer or, if insured, his insurance carrier admits liabili-

ty, such notice shall specify the amount, to whom, the period, and the disability for which compensation will be paid, and payment thereon shall be made forthwith. Upon proper showing in writing made within said times fixed therefor, the director may extend the time for filing such admission of liability, or notice of contest, but not exceeding ten days at any one time. Hearings may be set to determine any matter, but if any liability is admitted, payments shall continue according to admitted liability."

In 1983, the General Assembly repealed and reenacted § 8–53–102. See 1983 Colo.Sess. Laws, ch. 79, § 1 at 416–17.

5. Wangerin's claim for compensation named "James H. Curry and Co." as his employer and did not list Donna Curry as an employer. In the first notice of hearing sent to inform the parties of the initial hearing on Wangerin's complaint, Donna Curry was not named as a respondent and a copy of the notice of hearing was not mailed to her. The initial hearing was continued in order to allow Wangerin to obtain counsel. The notice mailed to respondents to inform the parties of the continued hearing date named Donna Curry as an employer. The caption indicated that the notice of hearing was "corrected to include other employer." A copy of this notice of hearing was mailed to Donna Curry. All subsequent pleadings named Donna Curry as a respondent in the case at bar. None of the parties contest the procedures utilized to include Donna Curry in the compensation proceedings.

Single Family Residential," and stated that as of January 10, 1979, there had been a change in the operations and location of the business "to include construction of a personal residence located at ... Sunnybrook Lane ... in addition to the continued operation of my office...." On May 16, 1980, the Fund sent an "audit adjustment statement" to Curry assessing an additional premium of $293 for "subcontractors" for the period commencing December 1, 1978, and ending December 31, 1979. Curry paid this supplemental premium, and the Fund credited the payment to Curry's account.

Both the Fund and Curry filed petitions with the Commission for review of the referee's decision. The Fund's petition asserted that the policy in question did not cover Wangerin. Curry's petition argued that the evidence did not support the referee's finding that Wangerin was an employee. Subsequent to the filing of these two petitions, Wangerin filed a document with the Commission. Entitled "Claimant's Reply to Employer's Request to Dismiss Appeal, or Remand for Supplemental Findings," this pleading stated as follows:

> "COMES NOW the Claimant, by and through his attorney, and replies to the Employer's position stated in its Request for Dismissal. The documentation pro-

vided by the Employer clearly proves that the Insuror, State Compensation Insurance Fund, has charged a premium based on the payroll of the above-named Claimant.

> "This being the case, the State Fund has apparently voluntarily accepted coverage for this compensable injury. Accordingly, the Claimant requests that the State Fund, by its own admission begin making payments to the Claimant pursuant to the Referee's Order.

> "It further appears to the Claimant that the coverage controversy has been resolved by the voluntary admissions and actions of the State Compensation Insurance Fund. Accordingly, the appeal should be dismissed and Supplemental Findings entered by the Industrial Commission and/or Referee and/or Director and/or Hearing Officer in this case."

The Commission's records do not contain any original document purporting to be a "Request for Dismissal" on behalf of Curry.[6]

On August 13, 1980, the Commission entered an order reversing the referee's decision. The Commission concluded that Curry and his wife were employers of Wangerin pursuant to section 8–48–102(1), C.R.S. 1973 (1982 Cum.Supp.),[7] and that the policy

---

6. A document entitled "Request to Dismiss Appeal or for Remand for Supplemental Findings," which document is asserted to be a copy of that request, was attached to the petition for review filed with the Commission by Curry on August 26, 1980.

7. Section 8–48–102(1), C.R.S. 1973 (1982 Cum. Supp.), was in effect when the Commission entered its August 13, 1980, order and states as follows:

> "Every person, company, or corporation owning any real property or improvements thereon and contracting out any work done on and to said property to any contractor, subcontractor, or person who hires or uses employees in the doing of such work shall be deemed to be an employer under the terms of articles 40 to 54 of this title. Every such contractor, subcontractor, and person, as well as their employees, shall be deemed to be employees, and such employer shall be liable as provided in said articles to pay compensation for injury or death resulting therefrom to said contractor and subcontractor

and their employees or employees' dependents and, before commencing said work, shall insure and keep insured his liability as provided in said articles. Such employer shall be entitled to recover the cost of such insurance from said contractor, subcontractor, or person and may withhold and deduct the same from the contract price or any royalties or other money due, owing, or to become due said contractor, subcontractor, or person. Section 8–48–102(1) was amended by the General Assembly in 1983 and now reads as follows:

> "*Except for the owner of a private home who contracts out any work done to or about said home,* every person, company, or corporation owning any real property or improvements thereon and contracting out any work done on and to said property to any contractor, subcontractor, or person who hires or uses employees in the doing of such work shall be deemed to be an employer under the terms of articles 40 to 54 of this title. Every such contractor, subcontractor, *or* person, as well as *his* employees, shall be deemed to be

issued by the Fund did not cover Wangerin's injuries. The order did not directly address Curry's contention that the evidence in the record did not support the referee's conclusion that Wangerin was an employee. However, the order did contain the following statements:

"We do not find merit to the contention of the Currys that the policy of James H. Curry d/b/a James H. Curry Co. with the State Compensation Insurance Fund covers the joint liability of the Currys for the ownership of the home. Further, the contract of insurance does not extend to business endeavors of Curry beyond that of his real estate appriasal business. The contract was based upon certain risks, namely, one clerical employee and Curry. The premium was calculated on that basis. The contract runs to the business and not to the individual. The owner of the house was not James H. Curry d/b/a/ James H. Curry Co."

The Commission also concluded, relying on *State Compensation Insurance Fund v. Batis,* 117 Colo. 1, 183 P.2d 891 (1947), that Wangerin's injury did not occur while he was an employee of James Curry d/b/a James H. Curry Company, but rather occurred while Wangerin "was a construction worker performing services on the private property owned in joint tenancy by James Curry and Donna Curry." The claim for benefits against the Fund was dismissed, and the case was remanded to the Division for consideration of an award of permanent disability benefits and penalties to be assessed against Curry and his wife.

Curry subsequently filed a petition for rehearing of the Commission's order, asserting, *inter alia,* that "the Industrial Commission arbitrarily and in abuse of its discretion failed to consider Curry's request to dismiss the appeal or for a remand for

supplemental findings...." The petition stated that "[t]his request was based on the actual fact that the State Fund had in fact assumed and provided insurance coverage for this accident by accepting a premium based on the inclusion of the claimant as an insured." Attached to the petition were an undated pleading titled "Request to Dismiss Appeal or for Remand for Supplemental Findings," and various letters between Curry and the Fund discussing premium audits.

On December 19, 1980, the Commission affirmed its order. Addressing the contention that it had refused to consider Curry's request to dismiss or remand, the Commission stated as follows:

"The Respondent has *never* filed the so called 'Request to Dismiss Appeal or for Remand for Supplemental Findings' with the Industrial Commission. That document and its supporting material are not contained in the file before the Industrial Commission except as an Exhibit to the Petition and Brief filed August 26, 1980. It was not presented to the Commission prior to its Order of August 13, 1980. The Commission is not required to consider that which is not brought before it in a timely and appropriate fashion.

"The evidence was not in existence at the time of the hearing before the referee. Although it was in existence at the time of the Industrial Commission's Order, it has never been presented to the Commission.

"It does not represent the circumstances at the time of the injury but involves bookkeeping adjustment made after the injury and *after* litigation. From the document attached to the Brief of the State Compensation Insurance Fund, it appears that the final outcome of the course of correspondence was the rejection of any funds for the coverage of the Claimant. The merits of the evidence

*an employee,* and such employer shall be liable as provided in said articles to pay compensation for injury or death resulting therefrom to said contractor, subcontractor, *or person* and *his* employees or employees' dependents and, before commencing said work, shall insure and keep insured his liability as provided in said articles. Such employer

shall be entitled to recover the cost of such insurance from said contractor, subcontractor, or person and may withhold and deduct the same from the contract price or any royalties or other money due, owing, or to become due *to* said contractor, subcontractor, or person." (emphasis supplied 1983 Colo. Sess. Laws, ch. 75, § 2 at 409.

**518**

aside it was not properly presented to the Commission and therefore cannot be considered." (emphasis in original)

The Court of Appeals concluded that petitioners did not raise the issues surrounding the parties' conduct in 1980 in a timely manner, and, on that basis, affirmed the Commission's decision that it need not consider the effect of the Fund's conduct in assessing and accepting an enhanced premium from Curry based on Curry's audit statement for the period including January of 1979. Petitioners assert that the issue was properly before the Commission. We agree with petitioners.

It is not disputed that the document in question was referred to by Wangerin in a pleading he filed with the Commission long prior to the Commission's initial decision. Curry himself brought the issue to the Commission's attention prior to the Commission's final order. Thus, the Commission's comment that *Curry* never filed such a request is not dispositive of the question of whether the issue was properly before the Commission. More importantly, the factual and legal issues thus brought to the Commission's attention are of substance and may be dispositive of the ultimate question of whether the Fund is liable for payments to Wangerin.

The Commission argues that the Currys have attempted an insidious tactical maneuver to subvert the administrative process in this case. Such characterization of the procedural posture of the case before the Commission assumes facts which are not based on any evidence. There has been no hearing concerning reasons why the original pleading in question is not part of the Commission's records. More importantly, such treatment ignores the fact, which is "of record," that some two months prior to the Commission's initial ruling Wangerin filed a pleading not only acknowledging the existence of Curry's pleading but indicating agreement with such request.

8. The Industrial Commission's December 19, 1980 order commented on letters discussing premium audits which had been exchanged between Curry and the Fund. The order express-

We conclude that in these circumstances the Commission's failure to address the issue of the effect of the conduct of the Fund and of Curry in early 1980 constitutes an abuse of discretion.[8] This issue, of critical importance to the interests of all parties, was brought to the attention of the Commission in a manner sufficient to require consideration of its merits. In view of our disposition of this issue, we do not address the question of whether the policy in question is a full coverage policy.

The decision of the Court of Appeals is reversed, and the cause is remanded with directions that it remand the cause to the Commission with directions to remand to the Division for factual and legal determinations of what effect, if any, the conduct of the parties in 1980 had on the issue of whether Wangerin's injuries were covered by Curry's policy.

ly stated, however, that issues arising out of this evidence "was not properly presented to the Commission and cannot be considered."